UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| George Cleveland, III, | ) C/A No. 4:14-2444-RBH-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Report and Recommendation |
| Warden Willie Eagleton, individually and in his official | ) |
| capacity; Associate Warden Roland McFadden, | ) |
| individually and in his official capacity; IGC Argie | ) |
| Graves, individually and in her official capacity; Officer | ) |
| M. Thomas; Unknown Nurse Manager; and Unknown | ) |
| Medical Doctor, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## **PROCEDURAL BACKGROUND**

Plaintiff, a prisoner proceeding *pro se*, filed this action under  42 U.S.C. § 1983[1] on June 19,

2014, alleging a violation of his constitutional rights. Plaintiff is currently housed at the Turbevil0le

Correctional Institution. At all times relevant to the allegations contained in the complaint, Plaintiff

was housed at Evans Correctional Institution (ECI). On April 10, 2015, Defendants  filed a motion

for summary judgment. As the Plaintiff is proceeding *pro se*, the court issued an order on or about

April 13, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff

of the motion for summary judgment procedure and the possible consequences if he failed to

respond adequately.  After several extensions, Plaintiff filed a response in opposition to the motion

on August 10, 2015. Defendants filed a reply.

On August 20, 2015, Plaintiff filed a motion for a temporary restraining order. (Doc. #117).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this
is a dispositive motion, the report and recommendation is entered for review by the district judge.

Defendants filed a response in opposition on September 8, 2015. (Doc. #123). On August 27, 2015, Plaintiff filed a motion for protective order. Defendants filed a response in opposition on September 11, 2015.

**Plaintiff's motion for TRO**

On August 20, 2015, Plaintiff filed a second motion for a temporary restraining order (TRO). (Doc. #117).  In the motion, Plaintiff requests that the court prevent "S.C.D.C. and MacDougall Correctional Institution from holding a disciplinary hearing on August 19, 2015, and/or thereafter for abuse of privileges; S.C.D.C. offense 847 pursuant to SCDC policy OP-22.14 (Inmate Disciplinary system) because they have failed to tell me what privilege I abused . . ." Id. Plaintiff argues that the SCDC is trying to discipline him "in Retaliation for requesting 400 sheets of legal white paper" thereby depriving him of access to courts since they are depriving him of a proper amount of legal white paper to file motions. Id. Plaintiff seeks a TRO to prevent the prison from sanctioning him to lock-up time, or any other "sanction under S.C.D.C. policy" and to enjoin MCI from an administrative transfer. Id. On August 27, 2015, Plaintiff filed a motion for a protective order with the same similar arguments as set forth in his motion for TRO.  Plaintiff seeks injunctive relief to order the institution to provide him with "the proper amount of legal material necessary to communicate with the court after I provide prison Administration without Reprisals, harassment, punishment, or penalties because of my decision to seek Judicial Review. . ." (Doc. #119). Plaintiff seeks a protective order to prevent the "S.C.D.C. staff at any institution in their prison system to inquire to the contents of my Locker unless its Related to the introduction of contraband, and/or institutional security." Id. On August 28, 2015, Plaintiff filed a notice of change of address informing the court that he is currently housed at the Turbeville Correctional Institution.

The standard articulated in Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), governs the issuance of preliminary injunctions. See Real Truth About Obama, Inc. v. Fed. Election Comm'n, 607 F.3d 355 (4th Cir.2010) ( per curiam ) ("On further consideration, we now reissue Parts I and II of our earlier opinion in this case, 575 F.3d at 345–347, stating the facts and articulating the standard for the issuance of preliminary injunctions."). Under the Winter standard, Plaintiff must demonstrate "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.' " Id. at 346 (quoting Winter, 555 U.S. at 20). All four requirements must be satisfied. Id. Furthermore, to obtain injunctive relief, Plaintiff must demonstrate more than the "possibility" of irreparable harm because the "possibility of irreparable harm" standard is inconsistent with the Supreme Court's characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that a plaintiff is entitled to such relief. Id.

Here, Plaintiff requests that this court issue a restraining order to enjoin SCDC and MCI from holding a disciplinary hearing and from issuing an administrative transfer on August 19, 2015, but the motion was filed on August 20, 2015. On August 28, 2015, Plaintiff informed the court that he had been transferred to Turbeville Correctional Institution. Therefore, the motion should be denied as moot. Further, in the motion for a protective order, Plaintiff requests that the court issue an order preventing the SCDC from inquiring into "the contents of my Locker unless its Related to the introduction of contraband, and/or institutional security." (Doc. #119). The courts are directed to leave prison administration to the discretion of those best suited to running the prisons. Granting Plaintiff injunctive relief would have the effect of allowing a prisoner to "approve" actions taken

3

by the prison administration that might have an impact on them, because any attempt to require his

compliance might be construed (by any of the parties) as a violation of the order.  Importantly, the

plaintiff has not shown that he is currently subject to a real and immediate threat of harm.  See Los

Angeles v. Lyons, 461 U.S. 95 (1983). Thus, it is recommended that the motion for protective order

be denied.

In the alternative, Plaintiff has failed to satisfy the four requirements as set out in Winter,

supra. Additionally, decisions relating to the day-to-day operation of prisons are entrusted to the

officials of the particular institution or correctional system. See Olim v. Wakinekona, 461 U.S. 238,

103 S.Ct. 1741, 75 L.Ed. 813 (1983).  Accordingly, it is recommended that Plaintiff's motion for

a temporary restraining order (Doc. #117) and motion for protective order (Doc. #119) be denied.[2]

## DISCUSSION

## STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants,

to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972);

Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of

fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal

construction does not mean that the court can ignore a clear failure in the pleadings to allege facts

which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor

can the court  assume the existence of a genuine issue of material fact where none exists.  If none

---

[2] Plaintiff fails to make the requisite showing. Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief.  Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997).

can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting

his or her position through "depositions, answers to interrogatories, and admissions on file, together

with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer

Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local

Rules 7.04, 7.05, D.S.C.

## ARGUMENT OF PARTIES/ ANALYSIS

The Plaintiff alleges a constitutional violation due to the conditions of confinement at the

ECI. Plaintiff's allegations primarily revolve around allegations that he was denied access to an extra

restroom outside his cell in addition to the toilet in his cell and, in a related claim, that he is being

forced to shower in stalls contaminated with human waste.  Plaintiff alleges that on one occasion

he urinated on himself when Defendant Thomas arrived at his cell door while conducting his

security check because he had refused to return to open the door earlier.  Plaintiff alleges that

Defendant Eagleton's decision to lock an unoccupied cell that was previously used by inmates as

an extra restroom violated his constitutional rights. He also alleges that prison officials have been

deliberately indifferent to his medical needs.[3]

To state a claim that conditions of confinement violate constitutional requirements, "a

plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate

indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d

1375, 1379 (4th Cir.1993) ( quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). Further,

a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a

---

[3] In his complaint, Plaintiff raised claims about not having what he believes to be adequate educational or vocational opportunities. Further, Plaintiff raised complaints regarding the handling of his grievances based on the SCDC grievance system. These claims were dismissed by Order filed November 4, 2014.

result of the challenged condition. See Strickler, 989 F.2d at 1380–81. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir.2003); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir.1993) ("[A] prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") (citation omitted). Also, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Ohm v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed. 813 (1983). "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." Id. at 338.

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether he was denied the minimal civilized measure of life's necessities, or that the named Defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the Defendants. Strickler, supra. Plaintiff had a bathroom in his cell so he was not without a bathroom. Plaintiff has failed to present evidence of the type of serious injury required to state a cognizable claim of cruel and unusual punishment. Strickler, 989 F.2d at 1381 ("plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions"). Therefore, it is recommended that summary judgment be granted for

7

Defendants on this claim.

Medical Indifference

Plaintiff alleges that he was taking prescription medications prior to prison for high cholesterol which was made known to the medical staff upon his arrival at ECI in mid November 2013. Plaintiff asserts that in April 2014, he was called to medical at ECI for the purpose of signing a medical release form to obtain his medical records from his doctor. Plaintiff alleges that he sent two requests to medical for the purpose of placing him back on his medication. He contends that one request was sent to medical in March 2013 and a second in April 2014, but he never received a response from the medical staff. In mid April 2014, Plaintiff alleges he wrote Warden Eagleton about the medical staff not responding to either request and explained the urgency of the situation for him to see the medical doctor, but he did not receive a response. Plaintiff alleges that the "unknown" Doctor and Nurse put him at a risk of harm by their lack of urgency and put him at "a risk of developing a fatty liver, and heart problems among many more chronic illnesses which I have a family history of, and the medical staff knows about my family history. Eagleton, Nurse Manager, and the Medical Doctor has failed to act in a reasonable amount of time." (Complaint at 14).

Defendants submitted the affidavit of Amy L. Smith who attests that she is employed with the SCDC as the Health Care Authority at ECI and is familiar with Plaintiff's complaint. (Smith Affidavit). Smith reviewed Plaintiff's medical records while he was incarcerated at ECI based on the time frame referenced in the complaint and attached an eight-page copy of Plaintiff's medical records maintained by the SCDC beginning January 7, 2014, to November 24, 2014, during his incarceration at ECI as Exhibit A. Id. Smith also attached as Exhibit B, a true and accurate copy of

8

an SCDC medical record relating to Plaintiff's medical conditions and medications at the time of

his transfer from Kirkland to ECI on January 7, 2014. Id.  The medical records reflect that upon his

transfer to ECI on January 7, 2014, Plaintiff had a history of cerebral palsy, anxiety, low

testosterone, and hyperlipidemia. Id. Upon arriving at ECI from Kirkland, Plaintiff was not taking

any prescription medications as of January 7, 2014. Id. Encounter 9 reveals that on January 14, 2014,

Plaintiff had blood drawn for a lipid panel and testing of testosterone levels. Id.  Encounter 11

reveals that Plaintiff's lab work results were abnormal and were reviewed by SCDC physician

Michael L. Hughes. Id. Medical encounter14 reveals that Plaintiff reported to ECI medical

department on January 27, 2014, for discussion of his abnormal lab results and was advised that he

would be placed on a heart healthy diet. Id. On September 18, 2014, Encounter 28 reveals that

Plaintiff reported to the ECI medical department on September 18, 2014, for sick call and requested

that his cholesterol be checked. Id. Plaintiff had been removed from the previously placed heart

healthy diet due to noncompliance. Id. On September 25, 2014, Plaintiff had blood drawn again for

testing of his cholesterol and triglyceride levels. Id. Encounter 31 indicates that Plaintiff's lab results

revealed  an improved cholesterol level of 214 as compared to the 240 result from the January 24,

2014, blood testing. Id. In addition to the specific encounters, Exhibit A indicates that Plaintiff had

been seen by ECI medical personnel and ECI mental health staff on other occasions between the

dates of January 7, 2014, and November 24, 2014, for various reasons. Id. Smith attests that having

reviewed Plaintiff's medical records, it is her opinion that he received more than simply adequate

medical treatment and care for any isolated and ongoing medical conditions and that all actions

taken by an SCDC employee or official were appropriate and in the best interest of Plaintiff. Id.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary

and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.2008) (internal quotation marks omitted).

To show a defendant's deliberate indifference to a serious medical need, a prisoner must allege the defendant knew of and disregarded "the risk posed by" that need. Id. "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. at 105–06, 97 S.Ct. 285. Such indifference can be displayed, however, through the response of prison doctors and other institutional personnel to an inmate's medical needs, including ignoring an inmate's serious condition or delaying medically necessary treatment. Id. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); see Smith v. Smith, 589 F.3d 736, 738–39 (4th Cir.2009) (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim).

Upon review of the record, including Plaintiff's medical records, the court does not find that Plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Plaintiff has alleged that he did not receive requested medication for his high cholesterol. However, he was not on medication when he was transferred into ECI, a blood panel screen was performed and upon finding

10

that he had high cholesterol, he was placed on a heart healthy diet. He was removed from the diet

for noncompliance. His blood was tested again in September 2014 and his levels had improved.

Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the

medical treatment provided, not that he was completely denied medical treatment. Plaintiff has failed

to show that he had a serious medical need of which Defendants knew about and consciously

ignored and has provided no evidence of any injury or harm caused by any alleged delay in

treatment. Plaintiff has not offered evidence that would support a finding that Defendants knew

about and intentionally or with reckless disregard ignored a risk posed by Plaintiff's condition.

Therefore, any claims of medical indifference should be dismissed.

Moreover, as to any allegations of medical indifference as to Defendants who are non-

medical  personnel, the claims fail. The Fourth Circuit has held that to bring a claim alleging the

denial of medical treatment against non-medical prison personnel, an inmate must show that such

officials were personally involved with a denial of treatment, deliberately interfered with prison

doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct.

Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990).  Prison personnel may rely on the opinion of the

medical staff as to the proper course of treatment.  Id.  Under these principles, the Plaintiff has not

alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment

against non-medical personnel.

Based on the evidence presented, there has been no deliberate indifference shown to the

overall medical needs of the Plaintiff.[4] For the above stated reasons, summary judgment should be

---

[4] If Plaintiff is attempting to hold any of the Defendants liable for the actions of their
employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is
not liable for the acts of their employees, absent an official policy or custom which results in illegal
action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v.

granted in favor of Defendants on this issue.

## Qualified Immunity

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff

gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes

that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified

immunity.

> The doctrine of qualified immunity attempts to
> reconcile two potentially conflicting principles: the
> need to deter government officials from violating an
> individual's federal civil rights and the need for
> government officials to act decisively without undue
> fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard

which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally
> are shielded from liability for civil damages insofar as their conduct
> does
>  not violate clearly established statutory or constitutional rights of
> which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for
> civil monetary damages if the officer's "conduct does not violate
> clearly established statutory or constitutional rights of which a
> reasonable person would have known." "In determining whether the

Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).

12

> specific right allegedly violated was 'clearly established,' the proper
> focus is not upon the right at its most general or abstract level, but at
> the level of its application to the specific conduct being challenged."
> Moreover, "the manner in which this [clearly established] right
> applies to the actions of the official must also be apparent."  As such,
> if there is a "legitimate question" as to whether an official's conduct
> constitutes a constitutional violation, the official is entitled to
> qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995).  As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights. However, even if there was a violation, Defendants are

entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be

granted as to these Defendants.


**Eleventh Amendment Immunity**

The Defendants contend that the Plaintiff's §1983 claims against them for money damages

in their official capacity are barred pursuant to Eleventh Amendment Immunity.  Defendants also

argue that the action against them should be dismissed as a matter of law to the extent that they are

sued in their official capacity because while acting in their official capacity as an employee of the

SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one

against the state, the real party in interest.  If review of the pleadings indicates that the state is, in

fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh

Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may

be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme

13

Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and

stated:

> Section 1983 provides a federal forum to remedy
> many deprivations of civil liberties, but it does not
> provide a federal forum for litigants who seek a
> remedy against a State for alleged deprivations of
> civil liberties.  The Eleventh Amendment bars such
> suits unless the State has waived its immunity (cites
> omitted) or unless Congress has exercised its
> undoubted power under   § 5 of the Fourteenth
> Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or

governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes,"

but the court found that state agencies, divisions, departments and officials are entitled to the

Eleventh Amendment immunity.  Will, supra at 70.  In reaching this conclusion, the court held that

a suit against state officials acting in their official capacities is actually against the office itself, and

therefore, against the state.  State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the

allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from

monetary damages in their official capacity.

**Pendent Jurisdiction**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint

somehow can be conceived to state an additional claim for relief under any state common law

theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want

of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## CONCLUSION

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the Plaintiff's motion for a temporary restraining order (Doc. #117) and motion for protective order (Doc. #119) be DENIED. It is FURTHER RECOMMENDED that the motion filed by Defendants (document #86) for summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

IT IS FURTHER RECOMMENDED that all outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 12, 2015
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**